Filed 6/12/14  167 E. Williams v. Blessings CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| 167 E. WILLIAMS LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DEVINE BLESSINGS et al., <br><br> Defendants and Appellants. | H038017 <br> (Santa Clara County <br> Super. Ct. No. 1-10-CV176152) |

Appellants Devine Blessings, Thomas J. Spielbauer, Esq. and Douglas B. Allen, Esq. (hereafter sometimes appellants) appeal from an order granting respondent 167 E. Williams LLC's (LLC) motion to compel further responses and denying appellants' three motions for protective orders.  In that order, the trial court imposed monetary sanctions against appellants in connection with LLC's motion to compel further responses and one of the motions for a protective order.

Appellants contend the trial court erred in that it:  (1) lacked jurisdiction to make the order because the time to bring a motion to compel further responses had lapsed; and (2) the monetary sanctions imposed in connection with the motion for a protective order were not apportioned nor was there an adequate attempt to meet and confer by LLC prior to the hearing.

LLC has also filed a motion[1] seeking sanctions against appellants on the grounds the instant appeal is frivolous and was brought solely for the purpose of causing delay.

We disagree and will affirm the order. We will also deny LLC's motion for sanctions on appeal.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Events leading to the underlying action*

On or about March 25, 2010, LLC acquired certain real property located at 167 E. William Street (the Property) in San Jose, California, via a trustee's sale, subject to a first and second deed of trust. The second deed of trust was created in 2003 when Dennis S. Spielbauer (brother to Thomas J. Spielbauer) borrowed $350,000 from Curtis L. Mitchell and executed a promissory note (the Mitchell note), secured by a deed of trust on the Property. By December 2009, Dennis had paid down the Mitchell note leaving a balance due of $4,389.16.[2] Approximately two weeks before LLC acquired the third deed of trust, however, the Mitchell note and second deed of trust were assigned to Devine Blessings, a corporation owned and controlled by Thomas.[3]

In April 2010, LLC entered into an agreement to sell the Property to a third party and escrow was opened with Old Republic Title Company (Old Republic). LLC sent a payoff demand to Devine Blessings seeking the amount due on the Mitchell note, which (at that time) it believed was $4,389.16. In response, Devine Blessings sent Old Republic a written payoff demand in the amount of $269,500, plus 10 percent interest from March

---

[1] The motion was joined by one Mehreghan Loefti, who is presumably connected to LLC in some undisclosed capacity. So far as we can tell from the record, Loefti is not a party to the proceedings below nor is Loefti named in the instant appeal.

[2] As discussed below, LLC subsequently determined the amount due on the Mitchell promissory note at the time of the trustee's sale was $7,152.03.

[3] Thomas and Allen were counsel of record for Devine Blessings.

2

2010.[4] LLC sought a detailed accounting of the written payoff demand, given the discrepancy between the amount it believed was owed versus the amount claimed by Devine Blessings. When that accounting was not provided, LLC again wrote to Devine Blessings requesting a revised payoff demand which complied with Civil Code section 2943, and advising Devine Blessings that its "inaccurate, overstated payoff demand jeopardized close of escrow" on the pending sale of the Property.

LLC's second amended verified complaint lists the following causes of action: (1) declaratory relief, seeking a declaration as to the amount owed on the Mitchell note; (2) intentional interference with economic advantage; (3) negligent interference with economic advantage; and (4) failure to provide an accurate payoff demand statement in violation of the Civil Code.

### B.     *The discovery disputes*

As part of its discovery, LLC contacted Mitchell to determine what information and documents he had regarding the Mitchell note he sold to Devine Blessings. On November 7, 2011, apparently after learning that Mitchell had been contacted by LLC and had provided it certain documents associated with the sale of the Mitchell note to Devine Blessings, Allen wrote to Mitchell advising him that he was "in breach" of the confidentiality provisions of the Mitchell note's purchase and sale agreement. Allen further demanded that Mitchell "defend and indemnify" Devine Blessings and Thomas in the lawsuit brought by LLC and demand the return of the documents "produced in violation of your contractual agreement."

On November 16, 2011, Devine Blessings filed a motion for a protective order, seeking to preclude LLC from "engaging in the following discovery: (1) All documents related to the Mitchell Note, defined as the 'promissory straight note dated June 16, 2003

---

[4] The written payoff demand claimed $126,000 in "principal" and $143,500 in "other."

between Curtis L. Mitchell and Dennis Spielbauer.' (2) All documents related to any note or other obligation secured by a deed of trust on 167 E. William Street, San Jose, California. (3) All documents related to any note or other obligation secured by a deed of trust on 499 South 5th Street, San Jose, California. (4) All documents related to any payoff demand related to any loan secured by either 167 E. William Street, San Jose, California or 499 South 5th Street, San Jose, California. (5) All documents related to the sale of the Mitchell Note. (6) All documents related to any assignment of the Mitchell Note. (7) All documents related to any assignment of any deed of trust securing the Mitchell Note. (8) All correspondence between Curtis Mitchell and his agents, attorneys, employees, representatives, accountants, and any other persons acting on his behalf and Thomas Spielbauer. (9) All correspondence between Mitchell and Devine Blessings. (10) All documents showing payments made on the Mitchell Note. (11) All documents reflecting the principal balance of the Mitchell Note at the time it was assigned to Devine Blessings and (12) All documents related in any way to any note or deed or other secured obligation of any kind that Mitchell transferred or assigned by any means to Devine Blessings. (13) All documents related in any way to any note or deed or other secured obligation of any kind that Curtis Mitchell transferred or assigned by any means to Thomas Spielbauer. (14) All documents related in any way to any note or deed of trust or other secured obligation of any kind that Curtis Mitchell transferred or assigned by any means to Dennis Spielbauer. (15-17) All documents regarding any agreement between Curtis Mitchell and Devine Blessings, Thomas Spielbauer and Dennis Spielbauer." Devine Blessings asserted several justifications for prohibiting discovery of these documents, namely that they were not "relevant," their production would violate "the right of privacy" as well as Devine Blessings' "[t]rade [s]ecrets." Finally, the "disclosure of such documents renders Curtis Mitchell in breach of his contractual obligation." [*Sic*.]

The documents Mitchell produced indicated that, at the time the Mitchell note was assigned to Devine Blessings, the principal balance was $7,152.03. Those documents

further revealed that, at the same time it purchased the Mitchell note, Devine Blessings had purchased a second promissory note from Mitchell related to property located at 484-486 South 5th Street, San Jose, California (the South 5th note). The remaining principal balance on the South 5th note was $118,847.97. Based on these documents, LLC suspected that Devine Blessings had aggregated the principal amounts due on both the Mitchell note and South 5th note to arrive at the $126,000 "principal balance" set forth in its response to LLC's payoff demand.

The documents provided by Mitchell also showed that Old Republic had handled the escrow for the sale of the Mitchell and South Fifth notes. LLC issued a deposition subpoena duces tecum to Old Republic for those records and testimony of Jean Peixotto, the escrow officer who handled the transaction. Peixotto countersigned a letter written by Mitchell and dated March 12, 2010,[5] affirming that she witnessed Thomas's refusal to sign any documents showing the value of either of the two notes purchased by Devine Blessings. According to the letter, Mitchell explained to Thomas that the purchase and sale agreement prepared by him only indicated that the "notes were being purchased for the sum of $126,000." The documents Thomas refused to sign, which were attached to the March 12, 2010 letter, set forth the present balance due on the Mitchell note ($7,152.03) and the South 5th note ($118,847.97). When asked why he would not sign them, Mitchell wrote that Thomas replied, "I have my own reasons for not signing them. I can't tell you what they are, but they do not involve you."

Dennis filed objections to the Old Republic subpoena, claiming production of those documents would invade his privacy. Despite being advised that he had no basis for objecting since he was not a party to the transaction, and therefore not a "consumer" as defined by Code of Civil Procedure section 1985.3,[6] Dennis refused to withdraw his

---

[5] The document was signed by Mitchell and Peixotto on March 15, 2010.
[6] Further unspecified statutory references are to the Code of Civil Procedure.

5

objection. LLC was forced to bring a motion to compel production of records and testimony from Old Republic.

LLC also served special interrogatories on Devine Blessings, seeking responses to questions about the amount owed on the Mitchell note and the components making up the amount of the payoff demand submitted by Devine Blessings. Devine Blessings' initial responses were deemed insufficient by LLC, so its counsel wrote to Thomas[7] trying to arrange a time to meet and confer about those responses either by telephone or in person. However, Thomas demanded that LLC put the deficiencies in writing to ensure a "written record" and to avoid "misunderstanding." LLC subsequently prepared a detailed letter addressing why it believed the responses to special interrogatories Nos. 1, 4, 5, 7-10, 15-17, 19 and 22 were deficient.

In its letter, LLC explained the deficiencies related to the following: (A) The amount owed on the Mitchell note (special interrogatory (SI) No. 1); (B) the amount of attorney fees claimed as part of the payoff demand (SI No. 4), and the components of the payoff demand other than the principal balance, interest and attorney fees and costs (SI No. 5); (C) the identification and hourly rate of persons who provided the claimed legal service (SI Nos. 7 & 8); (D) a detailed explanation of the legal work performed with respect to the Mitchell note, which were claimed to be recoverable on the payoff demand (SI No. 9), and the date(s) such services were provided (SI No. 10); (E) the amount Devine Blessings paid to acquire the Mitchell note (SI No. 15); (F) whether Devine Blessings made any monetary advances to any borrower on the Mitchell note (SI No. 16); (G) identification of the person(s) from whom Devine Blessings acquired the Mitchell note (SI No. 17), as well as the current borrower on the Mitchell note (SI No. 19); and (H) if the Mitchell note was acquired with other notes, identification of such other notes, including the amount (SI No. 22).

_____

[7] Allen associated in as counsel of record sometime in October 2011.

After LLC sent this letter, Allen, who had recently associated in as cocounsel, wrote to LLC indicating he would be out of town the following week, but would respond to the meet and confer letter on his return. LLC requested, and was granted, an extension of the deadline to file a motion to compel further responses. A second two-week extension was subsequently granted by Allen. A few days later, Allen confirmed that Devine Blessings would provide further responses to each of the special interrogatories listed in LLC's meet and confer letter (i.e., SI Nos. 1, 4, 5-10, 15-17, 19 & 22). Counsel for LLC sent an e-mail to Allen asking for a date by which it could expect the further responses as well as confirmation that "the deadline to move to compel as to any of the interrogatories in this set will be extended to be 45 days from the date of service (plus any days for mailing) following the service of the amended set." Allen did not respond to this e-mail.

Devine Blessings served its further responses on November 7, 2011. However, upon reviewing the responses, LLC believed they remained deficient for the same reasons raised in its initial meet and confer letter. In addition, Devine Blessings had failed to provide any supplemental responses to SI Nos. 8, 9, 15 and 17. LLC raised these issues with Devine Blessings in an e-mail and letter dated December 7, 2011. LLC followed up with a second letter dated December 9, 2011, when it received no response from Devine Blessings.

Devine Blessings responded by letter dated December 12, 2011, standing on its objections and taking the position that, because it had not provided further responses to SI Nos. 8, 9, 15 and 17, the date to bring a motion to compel on those interrogatories had expired.

LLC moved to compel further responses to all the interrogatories covered in its initial meet and confer letter, including the four to which Devine Blessings had failed to provide supplemental responses.

7

Following a hearing, the trial court ruled against Thomas and Devine Blessings on the two discovery motions at issue in this appeal, specifically, Devine Blessings and Thomas' motion for a protective order to limit discovery and LLC's motion to compel further responses to special interrogatories. The trial court awarded LLC monetary sanctions totaling $10,013.25, consisting of $4,582 on LLC's motion to compel further responses and $5,431.25 on appellants' motion for a protective order to limit discovery. The monetary sanctions were ordered against "Devine [Blessings] and its attorneys."

## II. DISCUSSION

### A. *Standard of review*

We review discovery orders for an abuse of discretion. (*Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 228.) A trial court's ruling on a discovery sanction is reviewed for abuse of discretion, as well. (*In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 108.) Discretion is abused only when it can be shown that the trial court has "exceed[ed] the bounds of reason, all of the circumstances before it being considered." (*Loomis v. Loomis* (1960) 181 Cal.App.2d 345, 348; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 (*Denham*).) " 'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham*, *supra*, at p. 566.)

### B. *The trial court had jurisdiction to rule on the motion to compel further responses*

Appellants argue the trial court lacked jurisdiction to rule on LLC's motion to compel further responses to four of the special interrogatories (Nos. 8, 9, 15 & 17).[8]

---

[8] The trial court denied LLC's motion to compel a further response to SI No. 17, due to LLC's "fail[ure] to include the text of [the special interrogatory] and Devine's response in a separate statement."

Because Devine Blessings did not provide supplemental responses to those interrogatories along with its other supplemental responses, the time to bring a motion to compel on those particular interrogatories expired.

"On receipt of a response to interrogatories, the propounding party may move for an order compelling a further response if the propounding party deems that any of the following apply:  (1) An answer to a particular interrogatory is evasive or incomplete. . . . (3) An objection to an interrogatory is without merit or too general."  (§ 2030.300, subd. (a).)  "Unless notice of this motion is given within 45 days of the service of the verified response, or any supplemental verified response, or on or before any specific later date to which the [parties] have agreed in writing, the propounding party waives any right to compel a further response to the interrogatories."  (*Id.*, subd. (c).)

We decline to interpret this statute in the manner appellants urge.  The statute provides that the motion to compel must be made within 45 days of the service of the response.  Here, LLC's meet and confer letter indicated that it deemed 13 of Devine Blessings' responses to be inadequate.  Accordingly, those 13 responses were put at issue, so to speak, and Devine Blessings was therefore obligated to respond, in some manner, to the concerns raised in LLC's meet and confer.  Devine Blessings subsequently warranted, in writing, it would provide further responses to all 13 interrogatories.  However, when it subsequently provided further responses to only nine, the time for LLC to move to compel responses to any or all of the 13 interrogatories identified in its meet and confer letter began to run on the date of that further response.  Accepting appellants' interpretation allows too much opportunity for gamesmanship, subverting one of the basic purposes of discovery.  (See *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 376 [by enacting discovery statutes, Legislature intended to take " 'game' " element out of trial preparation].)

9

Consequently, we find the trial court did not act in excess of its jurisdiction in considering LLC's motion to compel further responses to the special interrogatories Devine Blessings deliberately omitted from the additional responses it provided.

C. *The trial court did not abuse its discretion in imposing sanctions*

1. *The motion for protective order*

As detailed above, Devine Blessings and Thomas brought a motion for a protective order seeking to preclude discovery of 17 categories of documents, many if not all of which, go directly to the issues involved in the underlying litigation. In support of this motion, Devine Blessings and Thomas averred that the documents were neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Even a cursory review of the listed categories belies that assertion. For example, the motion sought to prevent production of "(1) All documents related to the Mitchell Note [and] (2) All documents related to any note or other obligation secured by a deed of trust on 167 E. William Street, San Jose, California, . . ." The entirety of this case revolves around the Mitchell note. What was the amount (actually) due on that note versus the amount Devine Blessings claimed was due? If LLC was precluded from obtaining this evidence, what evidence in support of its claims could it hope to produce?

Appellants argue the sanctions imposed were improper because they were requested in a joint opposition, and no effort was made by LLC to apportion the sanctions between the two protective order motions. The trial court expressly denied LLC's request for sanctions in connection with the motion for a protective order to limit discovery related to the Old Republic deposition subpoena duces tecum.

LLC's opposition, which did address both of the motions for protective orders, requested sanctions in the amount of $6,418.75, representing the attorney fees expended in opposing the motions. Appellants cite no authority for their contention that the trial court was precluded from awarding some portion of those fees to LLC in connection with one of the motions, and denying the request for sanctions in connection with the other

10

motion. The amount awarded ($5,431.25) was less than that requested, and was the exact amount identified in the declaration of LLC's counsel, less an additional $987.50 which counsel expected to bill for appearing at the hearing. We are in no position to second guess the trial court's determination that the sanctions imposed were reasonable under the circumstances.

Accordingly, the trial court did not abuse its discretion in imposing monetary sanctions in connection with the motion for protective order.

### 2. *The motion to compel further responses*

Appellants contend the trial court abused its discretion in imposing sanctions in connection with LLC's motion to compel further responses because: (1) one of the interrogatories improperly sought to invade the attorney/client privilege obtained between Thomas and Dennis; and (2) the order was based on LLC's disagreement with the content of the responses, not the lack of responses. We disagree.

In ruling on LLC's motion, the trial court ordered Devine Blessings to provide further responses to SI Nos. 1, 4-5, 8-10, 15-16 and 19. Again, even a brief review of the initial and further responses provided to LLC justifies the trial court's decision to impose sanctions in connection with the motion to compel.

For example, in SI No. 1, Devine Blessings was asked to "[s]tate the exact amount owed under the MITCHELL NOTE as of April 27, 2010." Devine Blessings initially objected, and indicated it could not answer because "the term 'exact amount owed under the MITCHELL NOTE' renders this interrogatory vague, and ambiguous. Devine Blessings does not understand if this interrogatory is requesting the amount which defendant believes constitutes the balance of the note, or if this question requests the total amount due to include not only the alleged principal of the note but includes as well the interest, attorney fees, and costs."

The further response to this interrogatory was, as follows: "Devine Blessings objects that the term 'exact amount owed under the MITCHELL NOTE' renders this

11

interrogatory vague, and ambiguous. Devine Blessings does not understand if this interrogatory is requesting the amount which defendant believes constitutes the balance of the note, or if this question requests the total amount due to include not only the alleged principal of the note but includes as well the interest, attorney fees, and costs. Without waiving the foregoing objection Respondent further replies as follows: The amounts owed are reflected in the 'Written Payoff Demand Statement' dated April 27, 2010, a copy of which is attached hereto." The attached payoff demand statement was the one which LLC contends was incorrect and improperly inflated.

Appellants argue that their answer to this (and apparently other similar interrogatories) "was an honest statement of their claim, which included not only the amounts previously claimed by Mr. Mitchell supplanted by the cost of the note acquisition, but the additional claims by the new holder of the trust deed." The problem with this response is that SI No. 1 specifically asked what was due under the Mitchell note, which was defined as "the Promissory Straight Note dated June 16, 2003 between Curtis L. Mitchell and Dennis Spielbauer in the original principal amount of $350,000." LLC was not asking (in this interrogatory at least) what amounts appellants grafted onto the Mitchell note, but rather what was due and owing on that specified note. Whether appellants were justified in including in their payoff demand "not only the amounts previously claimed by Mr. Mitchell supplanted by the cost of the note acquisition, but the additional claims by the new holder of the trust deed" is a matter for trial. Their failure to provide a straightforward response to this, and the other, special interrogatories to which the trial court ordered further responses, is sufficient basis for an award of sanctions in favor of LLC.

D.     *Motion for sanctions*

California Rules of Court, rule 8.276(a), gives the appellate court the authority to "impose sanctions . . . on a party . . . for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay. . . ." Section 907 states that "[w]hen it appears to the reviewing

12

court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."  An appeal should be held frivolous where it is "prosecuted for an improper motive--to harass the respondent or delay the effect of an adverse judgment--or when it indisputably has no merit--when any reasonable attorney would agree that the appeal is totally and completely without merit."  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  "An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions."  (*Ibid*.)

Although we have found the appeal to be without merit, we do not consider it frivolous.  There is no evidence that it was brought in bad faith.  Given the amount of the sanctions imposed and the bases for awarding those sanctions, it cannot be said that any reasonable attorney would agree that this appeal should not have been pursued.  While the arguments raised, both here and below, were not particularly strong, we cannot say that they were raised simply to harass respondents or delay an adverse judgment.  Therefore, the motion for sanctions is denied.

**III.    DISPOSITION**

The order is affirmed.  Respondent 167 E. Williams LLC's motion for sanctions for bringing a frivolous appeal is denied.  Respondent is entitled to recover its costs on appeal.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.