Filed 5/14/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| LYNN SHULER et al.,<br><br>   Plaintiffs and Appellants,<br><br>v.<br><br>CAPITAL AGRICULTURAL PROPERTY SERVICES, INC., et al.,<br><br>   Defendants and Respondents. | 2d Civil No. B289202<br>(Super. Ct. No. 56-2015-00469359-CU-PO-VTA)<br>(Ventura County) |

In this negligence/trespass action, Lynn Shuler and Michael Shuler appeal from the judgment entered after a jury returned a special verdict in their favor and against respondents Capital Agricultural Property Services, Inc., et al. Appellants claim the trial court erroneously reduced by 68 percent the economic damages awarded by the jury. The court made the reduction because the jury found that joint tortfeasors, who were employees of the United States, were responsible for 68 percent of the negligence and causation. But the employees were immune from liability because of a pretrial settlement between appellants and the United States. We agree with appellants that the trial

court erred. We modify the judgment to vacate the 68 percent reduction and affirm the judgment as modified.

This is the second time the parties have appeared before this court. Their first appearance resulted in a published opinion: *Dreamweaver Andalusians, LLC v. Prudential Insurance Co. of America* (2015) 234 Cal.App.4th 1168 (*Dreamweaver*).

*Factual and Procedural Background*[1]

Appellants owned a 22-acre ranch in Somis, California. They leased the property to Dreamweaver Andalusians, LLC (Dreamweaver). The property shared a common boundary with Las Posas Farms, owned by Sunshine Agriculture, Inc. (Sunshine). Capital Agricultural Property Services, Inc. (CAPS), "was the overall manager of Las Posas Farms," which consisted of approximately 700 to 800 planted acres. Sierra Pacific Farms, Inc. (Sierra) was the "on-site manager of Las Posas Farms." Sunshine, CAPS, and Sierra are hereafter collectively referred to as "respondents."

Sierra expanded its agricultural operations onto a hillside above appellants' property. In March 2011 the hillside collapsed onto their property.

Appellants and Dreamweaver filed an action against respondents, Doug O'Hara (Sierra's president), and Haejin Lee, who had prepared the engineering plans for the hillside development. The complaint alleged: "The Defendants . . . were responsible for the removal of historic watercourses and stable

---

[1] Portions of the background information are taken from our prior opinion in *Dreamweaver*, *supra*, 234 Cal.App.4th at pp. 1171-1173.

2

ground cover and also for unreasonable grading, irrigation, planting and maintenance of the hillside slope above [appellants'] . . . property. . . . Defendants acted negligently in failing to take steps to prevent the land from collapsing."

Haejin Lee was an employee of the Natural Resource Conservation Service (NRCS), a division of the United States Department of Agriculture. The trial court concluded that the NRCS was a necessary and indispensable party. The court observed that the NRCS "cannot be joined to the action by cross-complaint because it is a Federal agency not amen[ ]able to being sued in a state court." The court therefore dismissed the action without prejudice. Appellants and Dreamweaver appealed to this court. We affirmed the judgment of dismissal. (*Dreamweaver*, *supra*, 234 Cal.App.4th 1168.)

Appellants and Dreamweaver filed an action in federal district court against respondents and the United States. In May 2015 appellants and Dreamweaver accepted a $50,000 offer of judgment from the United States pursuant to rule 68 of the Federal Rules of Civil Procedure.[2] The settlement was incorporated into a judgment that provided, "Acceptance of the offer of judgment has acted to release and discharge defendant United States of America . . . and all past and present officials,

_____

[2] Rule 68(a) provides: "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment."

employees, representatives and agents of United States of America, from any claims that were or could have been alleged by [appellants and Dreamweaver] in this action."

Pursuant to Code of Civil Procedure section 877.6, the federal district court granted the application of the United States for a determination that the settlement was made in good faith.[3] The federal district court dismissed appellants' and Dreamweaver's action against respondents for lack of federal subject matter jurisdiction.

In July 2015 appellants and Dreamweaver filed a new state court action against respondents and Sierra's President, Doug O'Hara. The complaint consisted of four causes of action, including negligence and trespass. The cause of action for trespass alleged that defendants had "negligently caused the uphill property to come upon the plaintiffs' property without permission or license or necessity."

The case was tried to a jury. The jury returned a special verdict finding that Doug O'Hara was not negligent but that respondents had "negligently trespass[ed] or cause[d] a landslide to trespass upon Plaintiffs' property." The jury also found that Haejin Lee and Travis Godeaux were negligent and that their negligence was a substantial factor in causing harm to plaintiffs.

Godeaux was an engineer and employee of the NRCS. He performed a "geologic reconnaissance" of the hillside above appellants' property. He "went to the site on several occasions and instructed the people implementing the plan that they needed to make certain changes."

_____

[3] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

4

In its special verdict the jury apportioned negligence and causation as follows:  Sierra – 10 percent; CAPS – 10 percent; Sunshine – 10 percent; appellants – 2 percent; Travis Godeaux – 34 percent; Haejin Lee – 34 percent.  Thus, respondents together were responsible for 30 percent of the total negligence and causation, while Godeaux and Lee together were responsible for 68 percent.

Although Lee and Godeaux were immune from liability under the federal district court consent judgment, the special verdict form properly required the jury to determine their comparative fault.  "[I]t is error for a trial court not to allow the jury to assess the comparative fault of defendants who settled before trial.  [Citation.]" (*Romine v. Johnson Controls, Inc.* (2014) 224 Cal.App.4th 990, 1011.)

The jury awarded appellants economic damages of $1,756,499.99 and noneconomic damages of $50,000.  It did not award any damages to Dreamweaver.

In its judgment, the trial court noted that it had earlier ruled "that [respondents] are not liable for the conduct of the Federal Government, and its employees, Haejin Lee and Travis Godeaux, based upon the preclusive effect of the Federal Court Judgment."  Therefore, as to economic damages, the court ordered that respondents are jointly and severally liable to appellants only for their 30 percent share of the negligence: $526,950 less an offset of $66,666.67 for amounts paid by settling tortfeasors.  Accordingly, respondents' joint and several liability for economic damages was reduced from $1,756,499.99 to $460,283.33.

5

*The Trial Court Erroneously Reduced Respondents'*
*Joint and Several Liability for Economic Damages*

Appellants contend that respondents are jointly and severally liable for 100 percent of the economic damages, reduced by 2 percent for appellants' contributory negligence and an offset for amounts paid by settling tortfeasors. We agree.

For economic damages, California has adopted the "joint and several liability" doctrine. Pursuant to this doctrine, "each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury. . . . The joint and several liability doctrine . . . play[s] an important and legitimate role in protecting the ability of a negligently injured person to obtain adequate compensation for his injuries from those tortfeasors who have negligently inflicted the harm." (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 582-583.)

On the other hand, "liability for noneconomic damages is several only, so that defendants pay in proportion to their share of fault." (*Rashidi v. Moser* (2014) 60 Cal.4th 718, 720; see Civ. Code, § 1431.2, subd. (a) ["In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint"].)

Different approaches have been developed for apportioning economic damages among a plaintiff, a settling tortfeasor, and a nonsettling tortfeasor. (See *Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291, 303-304.) Where, as here, a determination has been made under section 877.6 that a tortfeasor (the United States) has made a good faith settlement, "the Legislature has

6

statutorily adopted" the approach of "setoff *without* contribution by the settling torfeasor to the nonsettling tortfeasor." (*Id.* at p. 304; see §§ 877, 877.6, subd. (c).) Pursuant to this approach, "nonsettling tortfeasors [respondents] are entitled to a credit in the amount paid by the settling tortfeasor. But . . . nonsettling tortfeasors may not obtain any contribution from the settling tortfeasor." (*Leung*, *supra*, at p. 303.)

Respondents argue that the rule of joint and several liability for economic damages is inapplicable because the settlement between the United States and appellants was incorporated into a federal court judgment. Respondents assert: "[T]he judgment precludes future state claims arising from the acts or omissions of the NRCS and its employees, Lee and Godeaux." Therefore,"[r]es judicata prevented [appellants'] recovery against respondents for any conduct of the NRCS and its employees." "Because [appellants] were barred from any recovery from respondents based on the conduct of the NRCS [and appellants' claims against respondents were based on such conduct], the trial court's decision to apply res judicata to reduce the damages here was correct. The trial court's failure to do so would have amounted to an effective dodging of the finality that must be accorded to parties and their privies by a final judgment."

There are two aspects to res judicata. "Claim preclusion, the ""primary aspect"" of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ""secondary aspect"" historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824

(*DKN Holdings*).)  Respondents are invoking the claim preclusion aspect of res judicata.[4]

To resolve the res judicata issue, we must interpret the effect of the federal court judgment.  "'The interpretation of the effect of a judgment is a question of law within the ambit of the appellate court.'"  (*Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205.)  Questions of law are reviewed independently.  (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384; see also *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228 ["Whether the doctrine of res judicata applies in a particular case is a question of law which we review de novo"].)

In the settlement with the United States, appellants did not waive their right to seek full compensation for their loss from other tortfeasors under the California rule of joint and several liability.  They waived their right to seek further compensation from the United States and its employees.  Therefore, the incorporation of the settlement into a judgment does not shield respondents from joint and several liability.  "'Although a stipulated judgment is no less conclusive than a judgment entered after trial and contest [citations][,] it is axiomatic that its res judicata effect extends only to those issues embraced within the consent judgment. . . .'"  (*Louie v. BFS Retail & Commercial Operations, LLC* (2009) 178 Cal.App.4th 1544, 1559.)

---

[4] We reject Sierra's claim at oral argument that it is relying on issue preclusion, not claim preclusion.  The issue of respondents' joint and several liability to appellants for economic damages was not "actually litigated and necessarily decided" in the federal action.  (*DKN Holdings*, *supra*, 61 Cal.4th at p. 825.)

Respondents argue that the rule of joint and several liability applies only to "separate and independent tortfeasors," not to a situation where, as here, liability is based on "vicarious or derivative liability, which flows from the acts of others." "[U]nder California principles of res judicata, [appellants'] cannot recover from the NRCS directly, and then recover a second time from the respondents, who were sued vicariously for the same conduct."

Respondents' argument is based on *DKN Holdings*, *supra*, 61 Cal.4th 813. There, our Supreme Court enunciated the following principle: "When a defendant's liability is *entirely deriv*[*ative*] from that of a party in an earlier action, claim preclusion bars the second action because the second defendant stands in privity with the earlier one. [Citations.] The nature of derivative liability so closely aligns the separate defendants' interests that they are treated as identical parties." (*Id*. at pp. 827-828, italics added.)

The principle enunciated in *DKN Holdings* is inapplicable here. Respondents' liability is not "entirely derivative" from that of the NRCS and its employees, Lee and Godeaux. (*DKN Holdings*, *supra*, 61 Cal.4th at pp. 827-828.) The complaint alleges that respondents were independently at fault: They "failed to conduct a Slope Stability Analysis, failed to obtain a soils study, failed to investigate the landslide history of the area and failed to provide for a proper factor of safety." "[Respondents] learned that several areas of [the hillside] were unstable and that large scale and long term deterring and other remediation measures were required to stabilize the condition. [Respondents] knew or should have known that their failure to immediately implement a meaningful stabilization program

9

would expose [appellants] . . . to severe risk of bodily harm and property damage. [¶] . . . [Respondents] failed and refused to implement an adequate stabilization program and failed to immediately warn their neighbors of both the degree and scope of instability [of the hillside] and their intent to avoid mitigating measures. These acts and failure to act . . . contributed, as substantial factors, to the catastrophic earth movements of March 2011."

In the special verdict form, the jury was asked, "What percentage of negligence and causation for plaintiffs' harm do you assign to the following [persons]?" The jury found respondents to be independently, not derivatively or vicariously, at fault for 30 percent (10 percent for each respondent) of the negligence that caused the landslide. The trial court instructed the jury that respondents "are not responsible for any actions or conduct on the part of Travis Godeaux and/or Haejin Lee." "It is presumed that the jury followed that instruction." (*Rodgers v. Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 630.) This is not a case where respondents "had no liability apart from that of [Lee and Godeaux] . . . and were thus . . . the same parties for purposes of [claim] preclusion." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 827.)

*Harmless Error*

Sierra maintains that "[t]he trial court's judgment limiting [its] liability to the jury-allocated 10% is harmless, because the court should have granted judgment notwithstanding the verdict to Sierra." (Bold and capitalization omitted.) Sierra reasons: "[A]ny potential negligence on the part of Sierra was entirely tied to O'Hara, its only managerial employee overseeing the hillside development. [The jury found that O'Hara was not negligent.] Accordingly, the trial court should have granted Sierra's motion

10

for judgment notwithstanding the verdict, and enter judgment allocating 0% of the 'negligence and causation' to Sierra to make it identical to O'Hara's 0% fault allocation." Because Sierra did not file an appeal, it forfeited any challenge to the judgment's allocation of 10 percent of the negligence to Sierra. (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665.)

CAPS and Sunshine make their own harmless error argument. They contend: "[I]f not for the trial court's ruling on the application of res judicata, [appellants'] outcome would have been far worse than the result they obtained." "At the outset of this case, respondents demurred to [appellants'] complaint based on the prior appellate court holding in *Dreamweaver*, *supra*, 234 Cal.App.4th at [p.] 1175, that the NRCS was a necessary and indispensable party to the case. In overruling respondents' demurrer here, the trial court relied on the preclusive effect of the prior federal judgment." "[T]here is no prejudice to [appellants] because the alternative to the trial court's order giving preclusive effect to the federal judgment would have been the complete dismissal of the entire action [for failure to join an indispensable party – the NRCS] following an order sustaining respondents' demurrer without leave to amend."

CAPS' and Sunshine's harmless error argument is devoid of merit. The NRCS was not an indispensable party in the present action against respondents because the extent of its liability had been determined by the federal consent judgment. "Where [as here] an alleged joint tortfeasor . . . in good faith settles the claim against him, he is forever discharged of further obligation to the claimant, and to his joint tortfeasors, by way of contribution or otherwise." (*Stambaugh v. Superior Court* (1976) 62 Cal.App.3d 231, 235.) Thus, the absence of the NRCS from the present

11

action did not mean that "complete relief [could not] be accorded among those already parties." (§ 389, subd. (a).) Nor did the absence of the NRCS "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [its] claimed interest." (*Ibid.*)

*Attorney Fees*

The trial court awarded attorney fees to appellants pursuant to section 1021.9, which provides, "In any action to recover damages to personal or real property resulting from trespassing on lands either under cultivation or intended or used for the raising of livestock, the prevailing plaintiff shall be entitled to reasonable attorney's fees in addition to other costs . . . ." The court found: "The unchallenged evidence at trial included that [appellants] were intending to raise cattle, were engaged in the breeding of Andalusian horses, and had a few cows, goats, and chickens on the property."

Appellants claim that they are also entitled to attorney fees on appeal. The claim has merit. (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 901.)

*Disposition*

The trial court's order reducing economic damages by 68 percent is vacated. The judgment is modified to award appellants economic damages in the amount determined by the jury - $1,756,499.99 - less the amount paid by settling tortfeasors to appellants,[5] less $35,130 for appellants' two percent

---

[5] In its judgment the trial court concluded that respondents "are entitled to an offset of 2/3rds the settlement amount of $100,000 (i.e., $66,666.67) against any award of economic damages arising from the judgment." But in their opening brief

12

contributory negligence.  The matter is remanded to the trial court with directions to enter a modified judgment pursuant to this formula.  Respondents shall be jointly and severally liable for the full amount of economic damages, which shall draw interest from the date of the original judgment, not the date of the modified judgment.  (See *Ehret v. Congoleum Corp.* (2001) 87 Cal.App.4th 202, 209-210.)  In all other respects, the judgment is affirmed.

As the prevailing parties in this appeal, appellants shall recover their costs on appeal.  They shall also recover their reasonable attorney fees on appeal in an amount to be determined by the trial court.

CERTIFIED FOR PUBLICATION.


YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

---

appellants concede that respondents are actually entitled to a "[r]eduction for 2/3 of $150,000 in pre-trial settlements," i.e., an offset of $100,000.

Harry Walsh, Judge

Superior Court County of Ventura

_____

Law Offices of Richard R. Bredlau and Richard R. Bredlau; The Ventura Law Group and Glenn J. Campbell; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiffs and Appellants.

Klinedinst, Robert G. Harrison, Robert M. Shaughnessy and Catherine M. Asuncion for Defendants and Respondents.

Grant, Genovese & Baratta and Lance D. Orloff; Proctor, Shyer & Winter and James N. Procter II for Defendants and Respondents.